FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 24 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HWESU S. MURRAY

                Plaintiff

- against -

THE CARSEY-WERNER COMPANY,
A California Partnership; MARCIA CARSEY;
THOMAS WERNER; CARSEY-WARNER LLC, A
California Limited Liability Company; THE
CARSEY-WERNER COMPANY, LLC, A
California Limited Liability Company; CARSEY-
WERNER PRODUCTIONS, LLC, A California
Limited Liability Company; CARSEY-WERNER
DISTIBUTION, LLC, A California Limited Liability
Company; and CARSEY-WERNER-
MANDABACH, LLC, A California Limited
Liability Company,

                Defendants.
-----------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**

16-CV-4688 (CBA)

**AMON, United States District Judge:**

On August 22, 2016, plaintiff Hwesu S. Murray, proceeding pro se, filed a complaint, along with a request for advance approval to file. (D.E. # 1.) Plaintiff also paid the requisite filing fee to commence this action. (D.E. dated August 23, 2016.) He filed an Amended Complaint on October 21, 2016. (D.E. # 5 ("Am. Compl.").) For the reasons set forth below, approval to file is denied and plaintiff's amended complaint is dismissed.

## BACKGROUND[1]

In 1980, plaintiff submitted an idea for a television show to an assistant to Brandon Tartikoff, an executive at National Broadcasting Co. Inc. ("NBC"), where plaintiff was then

---

[1] The following factual allegations are taken from the Amended Complaint, plaintiff's Affirmation in support of his request for advance approval to file this action, plaintiff's Memorandum of Law in support of his request, and the exhibits attached to these documents. The factual allegations are assumed to be true for purposes of this Order.

employed. (D.E. # 5-1 at 62[2].) The proposal was called "Father's Day," and suggested a half-hour situation comedy involving a middle-class Black family to star Bill Cosby. (Id. at 65.) At Tartikoff's assistant's request, plaintiff submitted an expanded proposal on November 1, 1980. (Id. at 64.) The proposal suggested a family structure including four children with another child away at college who would make periodic appearances. (Id. at 63–64.) The proposed show would "combine humor with serious situations in a manner similar to that of the old Dick Van Dyke Show," and would "involve situations in which the father's traditional views of success and the roles of fathers, mothers, and children are challenged by a new set of rules and ideas." (Id. at 66.) It suggested: "With tongue-in-cheek humor, [the father] re-evaluates middle-class American life, with a Black perspective, and adjusts his perception of the American dream in light of new realities." (Id.) On November 21, 1980, the studio returned the proposal to plaintiff with the explanation that "we are not interested in pursuing [its] development at this time." (Id. at 69.) In the fall of 1984, NBC began to air The Cosby Show, a television program about a Black family, with two professional parents, four children at home and one away in college, and starring Bill Cosby. (Id. at 70–71.) The Cosby Show was produced by defendant The Carsey-Werner Company, which held licensing agreements with NBC. (Am. Compl. ¶¶ 14, 74–75; D.E. # 5-1 at 70.)

On September 30, 1985, plaintiff commenced a lawsuit in the United States District Court for the Southern District of New York against NBC, Brandon Tartikoff, and some of the defendants in the instant case: The Carsey-Werner Company, Marcia Carsey, and Thomas Werner. (Am. Compl. ¶¶ 6, 10–11, 120.) The complaint alleged that the idea for The Cosby Show was plaintiff's "Father's Day," and that Tartikoff and NBC deliberately used plaintiff's idea, but decided to

---

[2] As the document's pages are not consecutively paginated, the Court refers to the page numbers provided on the Court's electronic filing system, ECF.

produce it without him. (D.E. # 5-1 at 74.) It alleged claims pursuant to 42 U.S.C. §§ 1981, 1982, and 1985(3); the Lanham Act, 15 U.S.C. § 1125(a); and the Racketeer Influenced and Corrupt Organizations Act. (See id. at 58.)

All of the defendants were initially represented by the same counsel and joined in an answer to the complaint which categorically denied plaintiff's allegations that The Cosby Show was modeled on plaintiff's proposal for "Father's Day." (Am. Compl. ¶ 161.) In particular, the answer claimed that no NBC employee related the details of "Father's Day" to Tartikoff prior to the litigation, (D.E. # 5-2 at 69[3]); asserted that the specific details for the family structure in The Cosby Show were based on details of Bill Cosby's own personal life and were not modeled on plaintiff's proposal, (id. at 70–72); and denied that any conduct by defendants supported a claim for damages, (id. at 78–82).

The defendants' initial request to move for dismissal was denied, and the parties commenced extensive discovery. (Am. Compl. ¶¶ 167, 169–71.) Beginning in March, 1986, the Carsey-Werner defendants were represented by separate counsel. (Id. ¶ 172.) The other two defendants, NBC and Tartikoff, moved for summary judgment on November 24, 1986 on the ground that plaintiff's idea for the show was not protected under New York law because it lacked novelty. (Id. ¶¶ 43, 47, 162, 179.)

The 1985 Carsey-Werner defendants joined that motion on November 26, 1986, while also asserting an independent basis for their dismissal. (D.E. # 5-2 at 98–100.) Counsel for Carsey and Werner indicated a separate ground for dismissal: that they had never heard of plaintiff prior to the litigation and had never seen his proposal for "Father's Day." (Am. Compl. ¶¶ 176, 180, 182, 184, 186.) Thereafter, Carsey and Werner each submitted an affidavit stating that The Carsey-Werner

---

[3] As the document's pages are not consecutively paginated, the Court refers to the page numbers provided on the Court's electronic filing system, ECF.

3

Company was the executive producer for The Cosby Show and that they had never heard of plaintiff or his proposal prior to September 1984. (D.E. # 5-2 at 56–59.)

Plaintiff asserts that attorneys for Carsey and Werner in the Murray v. National Broadcasting Co., Inc., No. 85-CV-7675 (MGC) (S.D.N.Y. 1987) (referred to herein as "85-CV-7675") litigation represented in open court on January 16, 1987, before the late Judge Miriam Cedarbaum, that defendants disclaimed any credit for the idea for The Cosby Show. (Am. Compl. ¶¶ 17, 204.) Plaintiff recalls Judge Cedarbaum stating "They're not claiming anything," which he believed to be her opinion for why the Carsey-Werner defendants should have then been dismissed from the lawsuit. (Id. ¶ 206.) "Plaintiff recalls that the representation by [the Carsey-Werner defendants' attorney] Mr. Eizenman to the Court and to [plaintiff's counsel] Mr. Santora, that the original Carsey-Werner defendants did not then, and would not in the future, assert any claim to the idea for 'The Cosby Show,' was a major factor that ultimately led to Plaintiff's agreement . . . as against the original Carsey-Werner defendants." (Id. ¶ 207.) Plaintiff recalls Mr. Santora stating that if evidence arose indicating that the Carsey-Werner defendants claimed credit for the idea for The Cosby Show, then he would seek reinstatement of those defendants. (Id. ¶¶ 208, 228.) "Plaintiff recalls that Judge Cedarbaum stated, either expressly or in words to the effect, that if any evidence arose indicating that the original Carsey-Werner defendants asserted any claim to the idea for The Cosby Show then she would reinstate them as defendants." (Id. ¶ 209.) No transcripts or other documentary evidence of this court proceeding are presented. "Plaintiff recalls that Judge Cedarbaum's statement that she would reinstate the original Carsey-Werner defendants as defendants if any evidence arose indicting that they asserted any claim for the idea for The Cosby Show was a significant factor in Plaintiff's decision to agree to the dismissal of his 1985 Complaint . . . as against the original Carsey-Werner defendants." (Id. ¶ 229.)

4

On February 4, 1987, plaintiff and The Carsey-Werner Company, Marcia Carsey, and Thomas Werner entered into a stipulation of dismissal, with prejudice, that was approved on February 23, 1987 by Judge Cedarbaum. (Id. ¶¶ 231–33, 259; D.E. # 5-1 at 56; D.E. # 5-2 at 52–55.) The stipulation stated that "the above-entitled action, and each and every claim asserted therein, is hereby dismissed with prejudice only as against defendants The Carsey-Werner Company, Marcia Carsey and Thomas Werner" and "final judgment of dismissal with prejudice shall be entered in favor of the Carsey-Werner defendants against plaintiff." (D.E. # 5-2 at 52.) The stipulation did not itemize "each and every claim" it dismissed, nor include any admissions of fact.

On July 15, 1987, Judge Cedarbaum granted NBC and Tartikoff's motion for summary judgment, "based upon a . . . finding of lack of sufficient novelty of the idea that was contained in the proposal that Plaintiff submitted to NBC." (Am. Compl. ¶ 43; see also D.E. # 1-3 at 207[4].) On July 22, 1987, the court entered final judgment against plaintiff. (D.E. # 1-3 at 207.) Plaintiff's appeal to the Court of Appeals was dismissed in a 2-1 decision on April 18, 1988, and his request for rehearing was denied on June 1, 1988. (Id.) On November 14, 1988, the United States Supreme Court denied certiorari. (Id.)

In 1993, plaintiff sought to reopen the case based on Apfel v. Prudential Bache Securities, 81 N.Y.2d 470 (N.Y. 1993) (holding that a showing of novelty was not required to validate a contract where a proposal was found to have value). (Id. at 208.) Judge Cedarbaum denied the motion for reconsideration. See Murray v. Nat'l Broad. Co., No. 85-CV-7675 (MGC), 1993 WL 485584, at *1 (S.D.N.Y. Nov. 24, 1993).

---

[4] As the document's pages are not consecutively paginated, the Court refers to the page numbers provided on the Court's electronic filing system, ECF.

Meanwhile, in state court, plaintiff brought claims against NBC and Tartikoff on May 30, 1989. (See D.E. # 1-3 at 209.) The defendants moved in the original federal action to enjoin plaintiff from prosecuting the new state court action, and Judge Cedarbaum issued a partial permanent injunction on August 31, 1989. See Murray v. Nat'l Broad. Co., 718 F. Supp. 249, 250–51 (S.D.N.Y. 1989). Plaintiff filed an amended complaint to reassert the remaining claims in state court, but the state court granted the defendants' motion to dismiss all of the claims under the doctrine of res judicata. Murray v. Nat'l Broad. Co., 1990 WL 384967, at *1 (N.Y. Sup. Ct. Aug. 14, 1990). The Appellate Division affirmed on December 5, 1991, 576 N.Y.S.2d 578 (N.Y. App. Div. 1991), and motion for reargument was denied on February 6, 1992 (D.E. # 1-3 at 210). On March 10, 1992, the First Department imposed costs and enjoined further motions. (D.E. # 1-3 at 210.) The Court of Appeals dismissed the appeal on May 12, 1992. 79 N.Y.2d 1036 (N.Y. 1992). Plaintiff brought a new suit in the New York Supreme Court, Westchester County, Index No. 8632/92, against NBC, on June 15, 1992, which was dismissed on January 25, 1993 under the doctrine of res judicata. (D.E. # 1-3 at 211.) On April 24, 1995, the New York Appellate Division, Second Department, affirmed; directed the Supreme Court, Westchester County, to enter a judgment declaring that plaintiff has no right, title, or interest in the television show known as The Cosby Show and its spinoff A Different World; and enjoined plaintiff from instituting any new suit related to rights in The Cosby Show without first receiving advance approval for leave to file. See Murray v. Nat'l Broad. Co., 626 N.Y.S.2d 810, 811–13 (N.Y. App. Div. 1995). On July 24, 1995, the Appellate Division imposed costs of $10,000 on plaintiff. Murray v. Nat'l Broad. Co., 629 N.Y.S.2d 802 (N.Y. App. Div. 1995). The Court of Appeals dismissed plaintiff's remaining motions and appeals on February 20, 1996. Murray v. Nat'l Broad. Co., 87 N.Y.2d 966 (N.Y. 1996).

On May 19, 2002, The Cosby Show: A Look Back aired on NBC. (Am. Compl. ¶ 19.) On August 24, 2010, the feature was posted to YouTube. (Id. ¶ 20). In the program, Werner claimed: "For all its success, The Cosby Show almost didn't happen. When Marcy and I initially pitched it to the networks, after developing the idea with Bill, it was summarily passed on by all three networks." (Id. ¶ 19.)

On March 19, 2008, plaintiff submitted a motion to the United States District Court for the Southern District of New York requesting permission to reopen 85-CV-7675 in order to seek a declaratory judgment against the Carsey-Werner defendants. (D.E. # 1-3 at 12.) The motion was returned to him by the clerk's office. (Id. at 13.) Informed by the staff attorneys that he could submit a new action, he did so on September 10, 2008, and, in conformity with the New York Appellate Division's April 24, 1995 injunction requiring him to obtain advance approval from any court before which he intended to assert claims related to any rights in The Cosby Show, he requested advance approval. (Id.) The papers were returned "under the direction of Judge Cedarbaum, who declined to rule." (Id.)

On July 25, 2011, plaintiff requested advance approval to file a complaint with the Supreme Court of New York, County of New York, but that request was denied on August 1, 2011. (Id. at 13–14, 68.) On August 2, 2011, plaintiff requested leave to appeal from the Court of Appeals, First Department, and that petition was denied. (Id. at 14, 70.)

In the instant complaint, plaintiff alleges that Werner's statement in the May 19, 2002 broadcast is at odds with Carsey and Werner's position in the 1985 lawsuit. Plaintiff now claims that the stipulation and settlement "was facially silent as to my Rights against the original Carsey-Werner defendants." (D.E. # 1-3 at 24–25.) He argues that the February 4, 1987 stipulation and February 23, 1987 final judgment indicated that the Carsey-Werner defendants failed to contest

7

the allegations in the 1985 Complaint, and thus served "as admissions of fact made by the original Carsey-Werner defendants" as to plaintiff's rights in The Cosby Show. (Am. Compl. ¶ 130.) He asserts: "[b]y the acts of signing and submitting their affidavits for the dismissal of Plaintiff's 1985 Complaint, . . . Defendants Carsey and Werner, for the original Carsey-Werner defendants collectively, essentially conceded Plaintiff's Rights and facts regarding The Cosby Show," (id. ¶ 237), and "made formal judicial admissions that, as between Hwesu S. Murray and the original Carsey-Werner defendants as competitors . . . , Plaintiff Hwesu S. Murray is the uncontested developer of the idea for The Cosby Show . . . [and] owns the uncontested Rights to The Cosby Show," (id. ¶ 239). He further asserts that "the formal judicial admission of Defendant Carsey and Defendant Werner are binding . . . and each constituted an act of a party done in the course of a judicial proceeding, which dispensed with the production of evidence by conceding, for the purposes of the litigation, the truth of a fact alleged by the adversary." (Id. ¶ 241.)

Plaintiff now asserts that the February 4, 1987 stipulation "was founded upon the original Carsey-Warner defendants' disclamation of the idea for The Cosby Show . . . , the absence of opposition from the original Carsey-Werner defendants to plaintiff's allegations of Rights, facts and relief regarding The Cosby Show . . . , and judicial admissions made by the original Carsey-Werner defendants regarding plaintiff's allegations of Rights and facts regarding The Cosby Show." (Id. ¶ 17.) Plaintiff purports to explain the meaning of the language used in the stipulation. He states: "As used in the Murray/Carsey-Werner Stipulation . . . the phrase, 'in favor of the Carsey-Werner defendants against plaintiff,' means in favor of the original Carsey-Werner defendants' representation of themselves as non-competitors against the plaintiff regarding the Rights to The Cosby Show based upon the developed idea for The Cosby Show." (Id. ¶ 273.) He now insists that the February 4, 1987 stipulation "thereby eliminated the original Carsey-Werner

8

defendants as competitors against the Plaintiff regarding the developed idea for The Cosby Show." (Id. ¶ 28.)

He asserts that the stipulation was a "bargain between the plaintiff and the original Carsey-Werner defendants, which, in exchange for the dismissal of the plaintiff's 1985 Complaint as against the original Carsey-Werner defendants, gave to Plaintiff against the original Carsey-Werner defendants, as competitors regarding the developed idea for The Cosby Show, the uncontested Rights, (including the Rights of ownership of The Cosby Show and Rights of Relief as set forth in plaintiff's 1985 Complaint), to The Cosby Show as the uncontested developer of the idea for The Cosby Show." (Id.) Thus, plaintiff asserts that "Under New York law, Hwesu S. Murray's bargain with Carsey-Werner in the Murray/Carsey-Werner stipulation on the Complaint, gave to Hwesu S. Murray, (in exchange for Carsey-Werner's dismissal), the uncontested rights to The Cosby Show that are based upon the underlying developed idea for The Cosby Show as between Hwesu S. Murray and Carsey-Werner." (D.E. # 5-2 at 1.)

Plaintiff further asserts that the subsequent July 8, 1987 Decision and Order and the July 22, 1987 final judgment "had no bearing whatsoever upon the statutory determination . . . final adjudication and judicial settlement of Plaintiff's uncontested Rights against the original Carsey-Werner defendants." (Am. Compl. ¶ 46.) Moreover, he states that Werner's statement broadcast on May 19, 2002 was a claim of credit for the idea to The Cosby Show and "cut their link to NBC's lack of novelty defense against the Plaintiff." (Id. ¶ 47.)

Plaintiff argues that Werner's subsequent claim in the May 19, 2002 broadcast that he and Carsey, along with Bill Cosby, developed and pitched the idea to the networks was an assertion of credit for the idea for The Cosby Show and that it "triggered Plaintiff's uncontested, finally-

adjudicated and judicially-settled Rights against them under the February 23, 1987 final judgment." (Id. ¶¶ 26, 50.) Plaintiff asserts that through Werner's statement

> the original Carsey-Werner defendants took credit for themselves, "(with Bill)," for developing, and then pitching to NBC . . . the idea for what became known as The Cosby Show; . . . firmly established themselves under the February 23, 1987 Final Judgment on Plaintiff Hwesu S. Murray's 1985 Complaint as retro-active competitors against the Plaintiff for credit for the developed idea for The Cosby Show; revived the case or controversy between themselves and Plaintiff Hwesu S. Murray . . . ; revealed that they obtained the plaintiff's agreement to the dismissal of plaintiff's 1985 complaint as against them by making a false and/or fraudulent representation that they would not assert any claim to The Cosby Show; . . . and triggered the enforceability of the February 23, 1987 final judgment on Plaintiff's 1987 complaint by the Plaintiff as against the original Carsey-Werner defendants as competitors regarding the developed idea for The Cosby Show.

(Id. ¶ 26.) "By publicly stating [that they developed the idea for The Cosby Show], Carsey Werner revived the controversy between themselves and Hwesu S. Murray, and triggered Hwesu S. Murray's Uncontested Rights against themselves under the dispositive Murray/Carsey-Werner Final Judgment on the [1985] Complaint." (D.E. # 1-2 at 88.)

Accordingly, plaintiff claims he is entitled "to enforce the February 23, 1987 final judgment on the 1985 Complaint against the original Carsey-Werner defendants as an uncontested money judgment." (Am. Compl. ¶ 48.) Plaintiff cites New York's Civil Procedure Laws and Rules § 5011 and New York state case law for the principle that "a judgment 'determines the rights of the parties.'" (D.E. # 1-2 at 2.) He also cites federal cases where defendants failed to answer or otherwise defend themselves and default judgments were entered "in the absence of any opposition from Defendants." (Id. at 12–13.) He argues he is entitled "to recover uncontested monetary relief [including] compensatory damages, punitive damages, and, inter alia, all profits and revenue derived by the original Carsey-Werner defendants from The Cosby Show and from its derivative spin-off, A Different World." (Am. Compl. ¶ 49.) He argues that he "is entitled to

10

the relief set forth in the 1985 Complaint as against the original Carsey-Werner defendants," including millions of dollars in damages, and injunctive and declaratory relief. (Id. ¶¶ 322–24, 402.)

Plaintiff also asserts claims against defendants under trademarks provisions of the Lanham Act and New York's Unfair Competition Act. (Id. ¶¶ 47, 330–31.) He alleges that the original dismissal of his 1985 case was "a result of the original Carsey-Werner defendants' fraudulent concealment of their fraudulent representation." (Id. ¶ 337.) He alleges that Werner's subsequent public statements about the development of the idea for The Cosby Show was a "false or misleading description of fact" "which is likely to cause confusion, or to cause mistake, or to deceive, or to give the public a false impression as to the origin of The Cosby Show . . . in violation of 15 U.S.C. § 1125(a)." (D.E. # 5-1 at 22.) He states: "the original Carsey-Werner defendants' August 24, 2010 claim . . . falls under the final adjudication and judicial settlement of the Murray/Carsey-Werner Final Judgment . . . as though it were made prior to the filing of the 1985 Complaint's Lanham Act Claims." (Id. at 24.) He seeks punitive damages of $100,000,000 for each alleged violation of the Lanham Act. (Id. at 38, 44, 140–41.)

## DISCUSSION

Leave to file the instant action is denied, because all of plaintiff's claims are precluded by the doctrine of res judicata. A district court has the power to dismiss pro se complaints sua sponte on res judicata grounds. Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) ("The failure of a defendant to raise res judicata in answer does not deprive a court of the power to dismiss a claim on that ground" sua sponte.); see also Rollock v. LaBarbera, 383 F. App'x 29, 30 (2d Cir. 2010) (summary order) (affirming district court's sua sponte dismissal of complaint on res judicata grounds). Res judicata bars subsequent litigation if: "(1) the previous action involved an

adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y.C. Dep't of Corrs., 214 F.3d 275, 285 (2d Cir. 2000).

"[O]nce a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the first action arose." Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) (internal quotation marks and citation omitted). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence. Res judicata applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence." L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999) (internal quotation marks and citations omitted).

The modern conception of privity, in the res judicata context, applies when a defendant has "a sufficiently close relationship to the original defendant to justify preclusion." Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367–68 (2d Cir. 1995); see also Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634, 640 (2d Cir. 1987) ("[A] finding of privity . . . depends on whether, under the circumstances, the interests of the [parties] were adequately represented [in the earlier action]."); Malcolm v. Bd. of Educ., 506 F. App'x 65, 68 (2d Cir. 2012) (dismissing claims against defendants who were agents or employees of the original defendant); Akhenaten v. Najee, LLC, 544 F. Supp. 2d 320, 329–30 (S.D.N.Y. 2008) (finding privity among defendants in a trademark infringement case where defendants shared common interest in finding that plaintiff had no rights in the mark); Tibbetts v. Stempel, 354 F. Supp. 2d 137, 148 (2005) ("Generally, an employer-employee or agent-principle relationship will provide

the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." (quoting 18 Moore's Federal Practice 3d § 131.40[3][f] (Matthew Bender ed.))).

In this case, plaintiff has acknowledged that the dispute as to who developed the idea for The Cosby Show is the same underlying issue that he litigated in his 1985 lawsuit in the Southern District of New York and subsequent state court actions. As in his original complaint in 85-CV-7675, he also raises these claims under the Lanham Act and New York state laws. The Carsey-Werner defendants in the instant action overlap with and are in privity with the defendants in 85-CV-7675. The Carsey-Werner defendants had license agreements with NBC. They jointly defended the prior lawsuit in its initial stages. Their interests overlap completely with the interests of the defendants in the prior suit: the common interest for all defendants was whether plaintiff has enforceable rights in The Cosby Show. That issue was litigated to its conclusion.

As to Carsey, Werner, and The Carsey-Werner Company, the issue was first resolved when plaintiff agreed to dismiss all claims as to them. The stipulation is clear: plaintiff's lawsuit docketed as 85-CV-7675 and "each and every claim asserted therein, is hereby dismissed with prejudice" and "final judgment of dismissal with prejudice shall be entered in favor of the Carsey-Werner defendants against plaintiff." (See D.E. # 5-2 at 52.) The defendants made no admissions of fact or otherwise conceded any of plaintiff's claims. Thereafter, in granting NBC's motion for summary judgment, the court found that plaintiff's idea for "Father's Day" lacked novelty and thus did not confer any protectable rights in The Cosby Show. Although separately dismissed from the case, the Carsey-Werner defendants had previously joined the NBC defendants' motion to dismiss and had adopted the lack-of-novelty argument. Plaintiff cannot now plausibly claim that the Carsey-Werner defendants did not share the NBC defendants' interest in adjudicating the

rights to The Cosby Show. The District Court for the Southern District of New York previously determined the rights of the parties as to ownership of the idea for The Cosby Show. Accordingly, any new action related to plaintiff's claims to rights in The Cosby Show would be precluded from relitigation under res judicata, and thus, this action will not be accepted for filing.

Plaintiff seeks to avoid the preclusive effect of the 1987 judgments by suggesting that the 2002 broadcast in which Werner allegedly claimed credit for the concept behind The Cosby Show constituted a separate and ongoing violation under the Lanham Act. However, the February 23, 1987 stipulation finally dismissed all of plaintiff's claims against the Carsey-Werner defendants, and the July 15, 1987 decision determined that plaintiff had no enforceable rights in The Cosby Show. Werner's alleged claim of credit in 2002 does not alter the final adjudication of plaintiff's claim of credit nor void the court's finding that the lack of novelty in plaintiff's idea was fatal to his claims.

Finally, plaintiff seeks to avoid the operation of res judicata by styling the instant action as arising under the Declaratory Judgment Act as an enforcement of a previous "Final Judgment." However, the judgment that plaintiff seeks to enforce is the February 23, 1987 judgment approving the February 4, 1987 stipulation, in which all of plaintiff's claims against the Carsey-Werner defendants were dismissed with prejudice. Plaintiff now argues that the settlement was "facially silent" as to his claims and that by stipulating to dismissal the defendants left his claims as "uncontested" "admissions of fact." To the contrary, plaintiff's 1985 complaint was clear in its claim to credit for the idea behind The Cosby Show, and the Carsey-Werner defendants vigorously defended themselves against the lawsuit. All of the defendants categorically denied plaintiff's claims in their joint answer, the Carsey-Werner defendants joined the NBC defendants' motion to dismiss on the ground that plaintiff's ideas lacked novelty, and Carsey and Werner each submitted

14

an affidavit claiming no prior knowledge of plaintiff's proposal for "Father's Day" before developing the show. Plaintiff's self-serving claim that counsel for the original Carsey-Werner defendants suggested that they did not claim credit for the idea is not supported by either their written affidavits or the stipulation of settlement. Plaintiff's factual allegations clearly were not "uncontested." Ultimately, plaintiff agreed to dismiss those defendants from the lawsuit, with prejudice, and all claims against them were dismissed. The final judgment indeed determined the rights of the parties: plaintiff gave up all claims against the Carsey-Werner defendants, thus releasing defendants from any liability. There is no favorable judgment for plaintiff to enforce. Accordingly, the Court will not permit plaintiff to proceed on this claim.

## CONCLUSION

As all of plaintiff's claims would be precluded under res judicata, his motion for advance approval to file the instant complaint is denied and his amended complaint is dismissed. Although plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Jun 23, 2017
Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon
United States District Judge